**EMPLOYERS ASSOCIATION OF NEW JERSEY, Plaintiff,**

v.

**STATE OF NEW JERSEY and Joseph F. Murphy, Commissioner Department of Insurance, State of New Jersey, Defendants.**

**Civ. A. No. 84–1429.**

United States District Court,
D. New Jersey.

Jan. 24, 1985.

---

Francis A. Mastro, Apruzzese, McDermott, Mastro & Murphy, Springfield, N.J., John F. Pilles, Jr., Schlesinger, Schlosser, Foy & Harrington, Mount Holly, N.J., for intervening party plaintiff New Jersey State AFL–CIO.

John J. Hayden, Deputy Atty. Gen., State of N.J., Dept. of Law & Public Safety, Div. of Law, Trenton, N.J., for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

In this action, the plaintiff, Employers Association of New Jersey, seeks declaratory and injunctive relief invalidating certain provisions of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, N.J.Stat.Ann. § 39:6A–1 et seq. as pre-empted by federal law. Plaintiff is a nonprofit, tax exempt organization consisting of more than 700 employers having facilities in New Jersey and engaging in such undertakings within this state as manufacturing, utilities, pharmaceuticals, petrochemicals, insurance and banking. Defendants are the State of New Jersey and Joseph F. Murphy, Commissioner of Insurance of New Jersey. I note that Mr. Murphy was subsequently replaced by Acting Commissioner Kenneth D. Merin.

This case is presently before me on three motions: plaintiff's motion for summary judgment, defendant's cross motion for summary judgment or dismissal and a motion by the New Jersey state AFL–CIO, representing the interests of employees, to intervene as a party plaintiff for the purpose of submitting a brief on behalf of plaintiff Employers Association. For the reasons set forth below, I have decided to grant the motion to intervene, to deny plaintiffs action for summary judgment and to grant summary judgment in favor of the defendants herein.

The undisputed facts are as follows. Since 1973, New Jersey has required that every owner of an automobile registered or principally garaged in this state maintain liability coverage in specified minimum limits, N.J.Stat.Ann. § 39:6A–3 (West 1973); N.J.Stat.Ann. § 39:6B–1 et seq. (West 1973); every automobile liability policy was required to provide, in addition to liability coverage, Personal Injury Protection ("PIP") benefits which were payable to an insured who was injured as a result of an auto accident without regard to negligence or fault. N.J.Stat.Ann. § 39:6A–4 (West 1973 Supp.1984). This additional coverage, known as "No-Fault," provided benefits for medical expenses, income continuation, essential services, survivor payments and funeral expenses. Motorists were required to purchase this complete package of coverage regardless of the individual's need, even if the person were paying for the same or similar coverage from another source. Since PIP coverage was considered "primary" in most instances (only workers' compensation, temporary disability and medicare benefits were deductible from PIP recoveries, N.J.Stat.Ann. § 39:6A–6 (West 1973 Supp.1984)) comprehensive health coverage provided by employers or others could not be used with respect to injuries arising from auto accidents. This was so because PIP provided "first dollar" coverage (i.e., no deductible amount applied) and was not limited by any maximum payment.

The only option available to motorists was the option to purchase even greater non-medical PIP coverage. Section 39:6A–10 of the Act permitted insureds to purchase increased income continuation, essential services, death and funeral expense benefits at increased premiums.

New Jersey also maintains a system whereby persons injured as a result of an automobile accident may be compensated when the injured person is not covered by his automobile insurance (and is not legally required to have maintained such insur-

ance) and the person liable for the accident is either unknown (as in a hit-and-run situation) or is uninsured and has no assets. Under these circumstances, the injured party can claim against the Unsatisfied Claim and Judgment Fund established pursuant to N.J.Stat.Ann. § 39:6–61 *et seq.* (West 1973). If successful, the claimant may recover from the Fund the unsatisfied portion of his claim up to the minimum limits of liability coverage required by law, N.J. Stat.Ann. § 39:6–73 (West 1973) and the minimum PIP benefits, N.J.Stat.Ann. § 39:6–86.1 (West 1973).

On or about October 4, 1983, New Jersey enacted a series of automobile insurance reforms known as the "New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984." The primary purpose of the Act was to help reduce the high cost of mandatory automobile insurance in this State. The Act created options which the individual policy holder could elect to significantly reduce his insurance premiums. The Act requires auto insurers to offer insureds (a) three deductible options (in amounts of $500, $1,000 and $2,000) with respect to the PIP medical expense coverage; (b) the option to exclude all of the non-medical PIP coverages, and (c) the option to reimburse the insurer for medical expenses paid on behalf of the insured in the event the insured later recovers a "pain-and-suffering" judgment against the at-fault driver. Curiously, plaintiff does not challenge these substantive changes in the insured's options under the New Jersey Scheme.

The Act further contains the following provisions challenged by the plaintiff herein. Section 4 of the Act, N.J.Stat.Ann. § 39:6–86.2 (West 1973 Supp.1984) states:

The benefits provided in sections 7 and 10, shall be payable as loss accrues, upon written notice of such loss except that benefits collectible under:

\*　\*　\*　\*　\*　\*

b. Any hospital, medical or dental benefits plan or policy coverage with benefits similar to those provided under section 7, in an amount not to exceed $2,500.00 for any one claim for any one person, shall be deducted from the benefits collectible under sections 7 and 10.

This provision rendered personal injury benefits available from the Unsatisfied Claim and Judgment Fund secondary up to a maximum of $2,500.00. Of course, amounts in excess of $2,500.00, or of the chosen deductible, are compensable as before from the Fund. Section 17(a) of the Act, N.J.Stat.Ann. 39:6A–23(a) (West 1973 & Supp.1984) requires that "written notice identifying and containing a brief description of all available policy coverages and benefit limits, and identifying which coverages are mandatory and which are optional under state law, as well as all deductible, exclusion, set off and tort limitation options offered by the insurer" be provided to all policy holders and accompany all applications for new policies or renewals. Further, "[t]he insurer shall identify the percentage of premium rate credit for each option as the case may be". Lastly, the notice must "also contain a statement on the possible coordination of other health benefits coverages with the personal injury protection coverage options, the form and contents of which shall be prescribed by the Commissioner of Insurance". Subsection (c) requires the Commissioner to "promulgate standards for the written notice and buyers guide required to be provided under this section".

Pursuant to this enabling legislation, the Commissioner has adopted the following regulations pertinent to the instant action:

a) In accord with section 17(a) of [the Act] the written notice and buyer's guide are to contain a statement on the possible coordination of other health benefit coverages with the personal injury protection [PIP] medical expense deductible options, . . . .

1. For purposes of this statment, 'coordination' shall mean the potential use of other health benefit coverages, including Medicare, as sources of full or partial payment or reimbursement for any personal injury protection medical expense benefit deductible selected.

2. When a PIP deductible has been selected and the insured has other applicable health benefits, such health benefits shall be the sole source of coverage up to the amount of the PIP deductible. Thereafter, the insured's PIP coverage shall apply for the payment of medical expenses.

N.J.Admin.Code Tit. II § 3–15.7.

It is further undisputed that in November, 1983, Blue Cross and Blue Shield sought the approval of the Commissioner of Insurance for a change in group health policies issued by them which would exclude from coverage benefits for injuries arising out of automobile accidents. The change was denied on the basis of the Act and on the basis of the statutory standards applicable to such a change: the Commissioner may disapprove such amendments if they are contrary to law, oppressive or calculated to mislead the public. N.J.Stat. Ann. § 17:48–8 (West 1963) (Blue Cross statute); N.J.Stat.Ann. § 17:48A–9 (West 1963) (Blue Shield statute). Commercial carriers were similarly advised that similar exclusions would be denied, under the Act and under statutes authorizing the disapproval of group policy forms which are "unjust, unfair, inequitable, misleading, contrary to law or to the public policy of this state." N.J.Stat.Ann. § 17B:27–25 (West 1973 Supp.1984) (group life forms); N.J.Stat.Ann. § 17B:27–49 (West 1973 Supp.1984) (group health forms). Neither of these determinations are challenged by the plaintiff herein. No application has been made or denied, formally or informally, by the "Blues" or by a commercial carrier, for approval of a change in deductible amounts required by group health policies and no application for inclusion of a "coordination of benefits" provision, in a contract where none previously existed, has been made or denied and neither of these issues is before the Court.

■ Before considering the pending cross motions for summary judgment, I turn first to the motion by the New Jersey State AFL–CIO to intervene as a party plaintiff. This motion is unopposed and

under the standards set forth in Rule 24 of the Federal Rules of Civil Procedure I find that the AFL–CIO should be permitted to intervene in this action and to submit a brief in support of the instant motion by plaintiff. I will, therefore, consider their brief along with other written submissions of the parties.

I turn now to the cross motions for summary judgment before me. As noted *supra*, plaintiff and intervenor plaintiff contend that the provisions of the New Jersey Cost Containment Act of 1984 quoted above are pre-empted by the Labor Management Relations Act, 29 U.S.C. § 141 *et. seq.* (LMRA) and/or by the Employee Retirement Income Security Act, 29 U.S.C. § 1144(a) (ERISA). In support of their cross motion, defendants contend (1) that plaintiff lacks standing to raise these claims and consequently that this court has no subject matter jurisdiction under Article III of the United States Constitution; (2) that federal law specifically exempts state law regulating insurance from the arguably pre-emptive effects of other federal statutes and (3) that neither declaratory nor injunctive relief are appropriate at this time in the instant case.

I turn first to the arguments raised by plaintiffs which are addressed to the case or controversy limit to the jurisdiction of this court under Article III. Plaintiff contends that its members either presently or in the future will be financially affected by the provisions of the New Jersey Act at issue herein. Plaintiff argues that forty percent of its member employers have collective bargaining relationships with labor organizations representing their employees. Many of these employers maintain, through the purchase of insurance, a plan or program for the purpose of providing for their employee participants and their families medical, surgical and hospital benefits in the event of accident, sickness or disability. Plaintiff contends that these plans are employee benefits plans within the meaning of ERISA. Some of these plans, purchased from private insurance carriers, contain a coordination of benefits

provision stating that the plan will not reimburse expenses covered by New Jersey "No-Fault" automobile insurance. Fourteen member employers maintain such plans, some of which are collectively bargained with labor organizations and none of which exclude from coverage claims for medical, surgical or hospital care benefits arising from motor vehicle accidents.

The crux of plaintiff's concern is that the effect of the cost containment measures challenged in the instant action will be to shift the coverage of personal injury resulting from automobile accidents from the mandatory automobile insurance policies and No-Fault system to the general health benefit policies held by individuals or, more relevantly, held by employee groups. Plaintiff contends that the coordination of benefits provision of the Act together with the increased deductible options and the Commissioner's refusal to permit the exclusion of coverage for injury resulting from automobile accidents in policies offered by private carriers, combine to increase the risk of loss which inheres in existing health insurance policies and benefit plans. In short, an individual may opt for a high auto policy deductible to lower her premium and in the event of personal injury due to an automobile accident will submit a claim in the amount of the deductible to her health insurance carrier instead. While the health insurer will be subject to greater liability, to the extent that this increase in claims manifests itself in increased premiums, this financial burden may be borne in whole or in part, by employers purchasing insurance for their employees pursuant to collective bargaining agreements or otherwise.

Defendants contend that there is no evidence that premiums have in fact been raised. Defendants also contend that the numbers of individuals opting for higher auto policy deductibles is not known. Further, defendants argue that any increase in premium which may be born by the employers is a function *not* of the challenged provisions of the Act but of the employers' decision to purchase insurance benefits for their employees. In sum, defendants argue that plaintiff lacks standing to sue based on these facts.

No party disputes that "Article III requires the party who invokes the court's authority to 'show that he personally has suffered some actual *or threatened* injury as a result of the putatively illegal conduct of the defendant', *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision', *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976)". *Valley Forge College v. Americans United*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (emphasis added) (footnote omitted). Although it may be "threatened" rather than "actual", the injury alleged must be "distinct and palpable" and "likely to be redressed if the requested relief is granted". *See id.* at 475, 102 S.Ct. at 760; *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

"The question whether future injury is sufficient is at times addressed as a question of standing, at times as a question of ripeness...." 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3531.4 at 434–35 (1984). Ripeness is a concept addressed to the presence of a case or controversy under Article III. The doctrine prevents "premature adjudication" and insures that constitutional decisions are based on concrete, not abstract, factual contexts and legal issues. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). The determination "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration. *Id.* at 149 [87 S.Ct. at 1515]." *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission*, 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983). Similarly, a case is ripe for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201

where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment". *Lake Carriers Association v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972) quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

▮ It is clear under this case law, that where the injury alleged is too remote the case may not be justiciable under Article III standards. This may be because the proponent of a legal claim can not show a distinct, palpable real or threatened injury giving her a stake in the controversy sufficient for standing under Article III. Similarly, this may be because the case has not sufficiently ripened into a concrete controversy with sharply defined adverse legal interest and a known factual context so as to avoid the dangers which inhere in advisory opinions. However, it is also clear that threatened injury is sufficient for standing and that a case may be ripe for preventive relief without compelling litigants "to await the consummation of threatened injury". *Pacific Gas & Electric Co.*, 461 U.S. at 201, 103 S.Ct. at 1721 quoting *Rail Reorganization Act Cases*, 419 U.S. 102, 144, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974) (quotations omitted).

▮ I am not persuaded that the contingencies which lie between the present and a potential increase in premiums charged to plaintiff's members by private insurance carriers are sufficient to deprive plaintiff of standing to sue or to make this case unripe for disposition by an Article III Court. The controversy is concrete it is not abstract. The threatened injury is neither speculative nor remote. Waiting until the threat of higher premiums becomes a reality will add nothing to the clarity of the legal issues not already before this court. Nor will it add to plaintiff's stake in the controversy stated herein. Finally, where the merits of the case involve the predominantly legal question of pre-emption, to the extent that prudential concerns of constitutional adjudication are implicated, a trial on the factual issues which underlie justiciability would be senseless. *See generally, Pacific Gas & Electric Co.* 461 U.S. at 201, 103 S.Ct. at 1720. Because it has standing and because this case is ripe for decision, this court has jurisdiction under Article III.

▮ I turn now to the merits of the pending cross motions for summary judgment on the question of pre-emption. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall not be granted unless, drawing all reasonable inferences in favor of the non-moving party, there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. *See Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984). The parties are agreed that no genuine issues of fact material to the disposition of plaintiff's pre-emption claims preclude the final adjudication of this case pursuant to Rule 56. For the reasons which follow, I hold that the challenged portions of the Cost Containment Act of 1984 are pre-empted neither by the LMRA nor by ERISA.

The Supreme Court has recently summarized the law of federal pre-emption:

When federal pre-emption is invoked under the directive of the Supremacy Clause, it falls to this Court to examine the presumed intent of Congress. See *Fidelity Federal Savings & Loans Assn. v. De la Cuesta*, 458 U.S. 141, 152–153 [102 S.Ct. 3014, 3021–3022, 73 L.Ed.2d 664] (1982). Our task is quite simple if, in the federal enactment, Congress has explicitly mandated the pre-emption of state law, see *Shaw v. Delta Air Lines*, 463 U.S. [85, ——, 103 S.Ct. 2890, ——, 77 L.Ed.2d 490] (1983), or has adequately indicated an intent to occupy the field of regulation, thereby displacing all state laws on the same subject, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed.2d 1447] (1947). Even in the absence of such express language or implied congressional intent to occupy the field, we may nevertheless find state law to be displaced to the

extent that it actually conflicts with federal law. Such actual conflict between state and federal law exists when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143 [83 S.Ct. 1210, 1217–1218, 10 L.Ed.2d 248] (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hines v. Davidowitz*, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941). See *Michigan Canners and Freezers Assn. v. Agricultural Board*, 467 U.S. [——, ——, 104 S.Ct. 2518, ——, 81 L.Ed.2d 399] (1984); *Fidelity Federal Savings & Loan Assn. v. De la Cuesta, supra.*

*Brown v. Hotel and Restaurant Employees & Bartenders*, —— U.S. ——, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984).

It is clear that Congress has not manifested an express or implicit intent to preempt state laws regulating insurance or to occupy the field of insurance regulation generally. To the contrary, the McCarran-Ferguson Act states:

No act of Congress shall be construed to invalidate, impair or supersede any law enacted by any state for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance....

15 U.S.C. § 1012(b). It is self evident that the LMRA is not an Act specifically relating to the business of insurance for purposes of this Section. *See Wadsworth v. Whaland*, 562 F.2d 70, 79 n. 44 (1st Cir. 1977). I therefore conclude that Congress intended that states be free to regulate the terms of insurance coverage and the relations between insurers and their insureds even if that regulation has some indirect effect on the collective bargaining process and the terms of employee benefit plans. In light of this explicit congressional intent *not* to pre-empt state law in this field, I find that the challenged provisions of New Jersey law are not pre-empted either by the express or implied intent of Congress embodied in the LMRA.

As noted in *Brown*, however, in the absence of congressional intent to occupy the field, a state law may still be pre-empted if "it actually conflicts with federal laws", 104 S.Ct. at 3185. Actual conflict can be shown if compliance with both laws is a "physical impossibility" or where state law is found to be "an obstacle to the accomplishment and execution of the full purposes and objectives of congress". *Id.* (citations omitted). Plaintiff contends that the state law in this case burdens the right and duty to bargain under the federal labor laws. It contends that the New Jersey Cost Containment statute mandates the terms of the collective bargaining agreements between plaintiff's members and their employees. I do not agree. Nothing in the New Jersey statute challenged herein mandates that employers provide health benefits for their employees, nor does it mandate that private insurers raise their premiums. The Commissioner has indeed denied Blue Cross and Blue Shield the right to exclude coverage of personal injury resulting from auto accidents because pursuant to state authority the Commissioner has determined that such an exclusion would be against public policy. This is precisely the sort of regulation Congress had in mind when it passed the McCarran-Ferguson Act quoted *supra*. I do not believe that Congress in passing the federal labor laws intended that employees and employers have the right to bargain for health benefit plans which contain an exclusion such as that requested by Blue Cross and Blue Shield at resulting lower premiums where the state has determined that such an exclusion would be against public policy.

Moreover, I am not persuaded that the cases cited by plaintiff mandate a contrary result. These cases do not deal with conflict between the federal labor laws and state laws regulating insurance and preemption will not be implied where Congress has explicitly indicated that state law should continue to govern a particular area. *See Malone v. White Motor Corp.*,

435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). The McCarran-Ferguson Act specifically indicates Congress' intent in this regard. *See* discussion *supra.*

With regard to plaintiff's argument that the challenged portions of New Jersey's auto accident insurance scheme are pre-empted by ERISA, I am similarly unpersuaded. It is true that ERISA is an Act specifically relating to the business of insurance and it is true that ERISA was enacted subsequent to the McCarran-Ferguson Act. It is also true that ERISA specifically provides that "the provisions of this [Act] ... shall supersede any and all state laws in insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). However, Section 1144 goes on to state that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). The sole exception to this exemption from the pre-emptive effect of the Act under § 1144(a) is that "[n]either an employee benefit plan ... nor any trust under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any state purporting to regulate insurance companies [or] insurance contracts...." 29 U.S.C. § 1144(b)(2)(B).

The challenged portions of the New Jersey law are not directed at employee benefit plans or trust funds. Instead, the Act deals with deductibles available in state-mandated auto insurance, notice to insureds of these options, and a coordination of benefits scheme providing that such auto insurance policies will not cover personal injury loss up to the amount of the deductible if covered by other health benefits held by the individual. These provisions regulate insurers and insurance with at most indirect effects on the cost of insurance charged to employers purchasing benefits for employees. Giving full consideration to the exception embodied in § 1144(b)(2)(B), I do not have any doubt

that New Jersey's Cost Containment Act of 1984 and the regulations promulgated thereunder are state laws regulating insurance under § 1144(b)(2)(A) and are thus expressly exempt from the pre-emptive scope of § 1144(a).

Plaintiff cites this court to cases in which state laws have been invalidated under ERISA. However, in all of these cases, the state law at issue, either directly or indirectly, purported to regulate employee benefit plans and not solely to regulate insurance as in the instant case. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (state law imposing requirements on employers offering benefit plans); *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (state workers compensation statute precluding employers from utilizing a particular method of competing pension benefits); *Dawson v. Whaland,* 529 F.Supp. 626 (D.N.H.1982) (state insurance statute explicitly made applicable to employee benefits plans). The challenged portions of the New Jersey law herein by its terms regulates insurance. It affects only the potential cost of purchasing comparable employee benefits through private insurance carriers and then only if the insurers chose to raise their premiums due to an increase in personal injury claims.

Plaintiffs have also cited this court to *Attorney General v. Travelers Insurance Co. et al,* 385 Mass. 598, 433 N.E.2d 1223 (1982) in which the Massachusetts Supreme Court found that a state statute mandating that hospital and surgical insurance policies provide mental health care benefits was not pre-empted by ERISA (or, for that matter, the LMRA). Plaintiff directs this court's attention to the fact that the case was remanded by the Supreme Court for consideration in light of *Shaw,* —— U.S. ——, 103 S.Ct. 3563, 77 L.Ed. 1405, and that after a decision on remand, the Supreme Court noted probable jurisdiction to appeal under 28 U.S.C. § 1257(2). Plaintiff contends that this is an indication that the United States Supreme Court may be intending to

reverse the Massachusetts Supreme Court on the pre-emption issue. This argument does not affect the instant case. The state statutes at issue in *Shaw* and in *Travelers* specifically required that employers provide particular benefits to their employees or that all health insurance policies with the express inclusion of "employees health and welfare fund[s] which provide hospital expense and surgical expense benefits" provide particular coverage. *See Shaw,* 463 U.S. 85 at ——, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490; *Travelers Insurance,* 433 N.E.2d at 1224 n. 2. The statutory provisions challenged herein do not mandate certain types of coverage. At most, the acts of the Commissioner pursuant to this statutory authority serve to prohibit certain exclusion in insurance policies as against public policy on a state wide basis. They would thus be unaffected by a reversal of *Travelers* in light of the *Shaw* case. Further, in *Shaw,* no argument was made that the exemption for regulation of insurance applied. I find that it does apply here.

I therefore conclude that the challenged provisions of the Cost Containment Act of 1984 are not pre-empted by either the LMRA or ERISA.

For the reasons set forth above in my discussion of ripeness, I find that declaratory relief to this effect is appropriate. Because I have decided to grant defendant's motion for summary judgment, I need not address defendant's argument that plaintiff's request for injunctive relief does not meet the governing legal standards for such relief.