TEAMSTERS LOCAL NO. 429
HEALTH AND WELFARE
FUND

v.

CHAIN BIKE CORPORATION,
d/b/a Ross Bike.

Civ. A. No. 85–6564.

United States District Court,
E.D. Pennsylvania.

Aug. 28, 1986.

Stephen C. Richman, Philadelphia, Pa., for plaintiff.

John S. Hayes, Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

■ The plaintiff, Teamsters Local No. 429 Health and Welfare Fund (hereinafter the "Fund"), instituted this action pursuant to: (1) § 301 of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, (2) the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), and (3) Pennsylvania's Wage Payment and Collection Law of 1961 (WPCL), as amended, Act of July 14, 1961, P.L. 637, 43 P.S. § 260.1 *et seq.* The Fund charges in its complaint that the defendant failed to contribute to the Fund for the month of January, 1985, as allegedly required by the collective bargaining agreement executed on January 1, 1982, by and between the defendant corporation and Local 773, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter the "Union"). The defendant in its answer denies that the collective bargaining agreement required any such contribution. It further claims that the plaintiff's action is barred by the principles of *res judicata* and/or collateral estoppel, that the action is barred by an arbitration award issued by Arbitrator Wayne E. Howard on September 25, 1985, pursuant to a grievance filed by the Union on the same issue, and that the plaintiff's pendent state law claim under Pennsylvania's WPCL is barred by the doctrine of preemption.[1] Presently before us

---

1. The defendant in its cross-motion for summary judgment and accompanying memoranda has not pursued its claim that the plaintiff's action is barred by *res judicata,* collateral estoppel and/or the arbitration award rendered by Wayne E. Howard. We, therefore, find the defendant has abandoned these defenses. Further, it is clear that any such arguments are meritless based on the Third Circuit Court of Appeals' recent decision in *Moldovan v. Great Atlantic & Pacific Tea Co., Inc.,* 790 F.2d 894 (3d Cir.1986), in which the court held that pension fund trustees are not precluded from relitigating issues decided in an arbitration between the union and the employer since there is no identity of interests between the beneficiaries of the

for disposition are the parties' cross-motions for summary judgment.

Prior to addressing the plaintiff's claim that the defendant has failed to fulfill its contractual obligation to the Fund, we must first address the preemption issues raised by the defendant in its answer and cross-motion for summary judgment. We believe we must also relate the underlying, undisputed facts of this case so that our discussion of these issues might be better understood.

## THE FACTS

The collective bargaining agreements between the Union and the defendant prior to the execution of the 1982–85 labor contract had required the defendant to provide Blue Cross/Blue Shield health insurance coverage for all "eligible" employees. The defendant's contract with Blue Cross/Blue Shield annually expired on February 1. During negotiations to renew the contract which expired on December 31, 1981, the Union demanded, *inter alia,* that the Blue Cross/Blue Shield coverage be replaced by the Teamsters Health and Welfare Fund. When the parties failed to reach an accord by December 31, 1981, they agreed to extend the existing contract daily while negotiations continued and the employees continued to work. They reached an agreement as to the terms of a new contract on January 25, 1982. For purposes of "continuity", the commencement date of the new contract was back-dated to January 1, 1982. The contract was to expire on December 31, 1984.

The 1982–1985 agreement incorporated the Union's demand that the Blue Cross/Blue Shield coverage be replaced by the Teamsters Fund. Article XVI of the 1982–85 contract, entitled "Health, Welfare and Insurance Coverage", provided in its pertinent parts as follows:

> The Employer hereby agrees to contribute to the Teamsters Local No. 429 Health and Welfare Fund the following

monthly contributions for each eligible employee:

| | |
|---|---|
| Effective February 1, 1982 | $ 85.00 per month |
| Effective February 1, 1983 | $ 95.00 per month |
| Effective February 1, 1984 | $105.00 per month |

\* \* \* \* \* \*

> To be eligible for this plan an employee must work 60 hours of each preceding month and have at least six months employment.

\* \* \* \* \* \*

(See Memoranda in Support of Defendant's Cross-Motion for Summary Judgment, Doc. # 7, Exhibit "A").

During the month of January, 1982, the Company had, under the terms of the pre-existing contract and its agreement with the Union to extend this contract, continued to provide Blue Cross/Blue Shield coverage for eligible employees. Thus, based on the terms of the 1982–85 contract, specifically, Article XVI, the commencement of the defendant's obligation to the Fund coincided with the expiration of its contract with Blue Cross/Blue Shield on February 1, 1982.

As the expiration date of the 1982–85 contract approached, *i.e.,* December 31, 1984, the Union and the defendant once again commenced negotiations aimed at reaching a new agreement and, once again, the parties failed to reach an accord before the expiration of the existing contract. The Union, as a result, commenced a lawful strike against the defendant which continued until January 25, 1985. On that date, the Union and the defendant executed a new collective bargaining agreement, back-dating, for purposes of "continuity" as before, the commencement date of the contract to January 1. The contract will expire on December 31, 1987. The provisions of this new contract regarding the defendant's obligation to the Fund are, with minor alterations, identical to the provisions of the 1982–85 contract. Article XVI of the 1985–87 agreement provides as follows:

> The Employer hereby agrees to contribute to the Teamsters Local No. 429

pension fund and the members of the bargaining unit and, thus, the requirements of due

process pertaining to non-mutual collateral estoppel are not satisfied.

Health and Welfare Fund the following monthly contributions for each eligible employee:

| | |
|---|---|
| Effective February 1, 1985 | $115.00 per month |
| Effective February 1, 1986 | $125.00 per month |
| Effective February 1, 1987 | $135.00 per month |

\* \* \* \* \* \*

To be eligible for this plan an employee must work 60 hours of each preceding month.

\* \* \* \* \* \*

(See Memoranda in Support of Plaintiff's Motion for Summary Judgment, Doc. # 5, Attachment 1).

### THE PREEMPTION ISSUES

■ The defendant first argues that this Court lacks jurisdiction under either LMRA or ERISA to adjudicate this dispute since the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., vests jurisdiction to resolve this matter exclusively with the National Labor Relations Board. The defendant's conclusion is premised upon its characterization of the plaintiff's action as a claim under § 8(a)(5) of the NLRA, 29 U.S.C. § 158(a)(5). It is indeed true, as the defendant argues, that courts must defer to the exclusive competence of the National Labor Relations Board where the employer's conduct is arguably subject to §§ 7 or 8 of the NLRA. See Moldovan v. Great Atlantic & Pacific Tea Co., Inc., supra. It is also true that § 8(a)(5) of NLRA requires an employer to continue to abide by the terms of an "expired" collective bargaining agreement until the parties have bargained to an "impasse". Id. We believe the defendant mischaracterizes the nature of the Fund's claims however. While the plaintiff may possess a claim against the defendant pursuant to § 8(a)(5)

of the NLRA, the claim which the Fund has asserted before this Court rests solely upon the defendant's obligations, or lack thereof, under the 1982–85 contract. The Fund's sole contention is that the defendant was obligated under the 1982–85 agreement to contribute to the Fund for the month of January, 1985, according to the number of eligible employees working for the defendant during December, 1984; it has asserted no claim, under the NLRA or otherwise, that the defendant possessed some obligation independent of the collective bargaining agreement itself to comply with the terms of that agreement. The defendant's argument, therefore, is unavailing, and we find and conclude that this Court possesses jurisdiction under both LMRA and ERISA to adjudicate this conflict.[2]

■ In the same vein as its preemption argument regarding the NLRA, the defendant also argues that the Fund's pendent state law claim under Pennsylvania's WPCL is preempted by federal statutes. As far as the defendant's assertion that the NLRA preempts the Fund's pendent state law claim is concerned, its argument fails for the same reasons we have just stated that the NLRA does not divest this Court of jurisdiction. The defendant again mischaracterizes the gravamen of the Fund's action as alleging a violation of § 8(a)(5), and as a result, it relies upon inapposite authority for its legal conclusion. When the Fund's claim is correctly characterized as only alleging a breach of contract, it is clear that the plaintiff's action under the WPCL is not preempted by the NLRA since the plaintiff has made no allegation that the defendant's conduct in any way constituted an unfair labor practice arguably within the purview of NLRA.[3] See

---

**2.** The record before us gives no indication that the Fund or the Union have filed any unfair labor practice charge against the defendant with the NLRB, nor has any party requested that this Court in the interest of judicial economy and efficiency defer ruling on this matter pending the outcome of any such litigation before the NLRB.

**3.** As noted by District Court, now Circuit Court, Judge Mansmann in Moldovan v. Great Atlantic

& Pacific Tea Co., Inc., No. 82–2717, slip op. (W.D.Pa. April 17, 1985), rev'd on other grounds, 790 F.2d 894 (3rd Cir.1986), the NLRA does not preempt a district court's jurisdiction over a § 301 LMRA action for breach of contract which is also an unfair labor practice. Thus, even if we accepted the defendant's characterization of the plaintiff's claim as alternative to the § 301 action, we would still possess jurisdiction to adjudicate the breach of contract claim.

*International Longshoreman's Association, AFL-CIO v. Davis,* — U.S. ——, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986).

The defendant next argues that, if not preempted by NLRA, then the plaintiff's claim under the WPCL is preempted by § 301 of LMRA. Here, the defendant relies primarily upon a decision of the Seventh Circuit Court of Appeals in which that court held that § 301 preempted application of the Illinois Wage Payment and Collection Law, Ill.Rev.Stat. ch. 48, ¶ 39m–1 *et seq.,* by the State's administrator of the Act so as to require an employer to pay vacation benefits under the terms of a collective bargaining agreement. The court stated that in enacting Taft-Hartley (LMRA), Congress created an exclusive federal remedy for the breach of a collective bargaining agreement and that no action to enforce such an agreement may be based upon state law. *See National Metalcrafters v. McNeil,* 784 F.2d 817 (7th Cir.1986); *see also, Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Oglesby v. RCA Corp.,* 752 F.2d 272 (7th Cir.1985); *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2nd Cir. 1985), *appeal pending,* — U.S. ——, 106 S.Ct. 378, 88 L.Ed.2d 332; *Eitmann v. New Orleans Public Service, Inc.,* 730 F.2d 359 (5th Cir.1984); *Miller v. Lay Trucking Co., Inc.,* 606 F.Supp. 1326 (N.D.Ind.1985); *Employers Association of New Jersey v. State of New Jersey,* 601 F.Supp. 232 (D.N.J. 1985); *Combs v. Indyk,* 554 F.Supp. 573 (W.D.Pa.1982); and *Buczynski v. General Motors Corp.,* 456 F.Supp. 867 (D.N.J. 1978), *on reconsideration,* 464 F.Supp. 133. *But see, I.A.M. National Pension Fund v. Monal Manufacturing Co., Inc.,* 607 F.Supp. 512 (D.D.C.1985).

We are, of course, obligated to abide by any contrary precedent established by the Third Circuit Court of Appeals on this issue. As such precedent, the Fund points to the Third Circuit's decision in *Carpenters Health and Welfare Fund of Philadelphia*

*v. Ambrose, Inc.,* 727 F.2d 279 (3d Cir. 1983). *See also, Amalgamated Cotton Garment & Allied Industries Fund v. J.B.C. Company of Madera,* 608 F.Supp. 158 (W.D.Pa.1984). In *Ambrose,* the Third Circuit held that the employer's claim that LMRA and/or ERISA preempted Pennsylvania's WPCL was without merit. 727 F.2d at 282, fn. 5. More recently, however, the court held that ERISA did indeed preempt the WPCL insofar as it authorized a cause of action against certain corporate officers as individuals, thereby making such individuals personally liable for any unpaid contributions which might be found to be due a pension fund. *See McMahon, et al. v. McDowell,* 794 F.2d 100 (3d Cir. 1986).[4] Interestingly, the defendant has made no argument that ERISA preempts the plaintiff's WPCL claim. Nevertheless, we believe that the question of whether LMRA preempts the WPCL cannot be answered without reference to ERISA and that, in fact, for the reasons stated hereafter, the true issue is whether the plaintiff's WPCL claim is preempted by ERISA. *See Carpenters Health and Welfare Fund of Philadelphia v. Ambrose, Inc.,* No. 79–1224 slip op. (E.D.Pa. October 7, 1982).

Preemption is, of course, a question of Congressional intent. Thus, the question we must answer is whether Congress intended that the plaintiff's state law cause of action under the WPCL be preempted by one or another federal statute. *See Baker v. General Motors,* — U.S. ——, 106 S.Ct. 3129, 92 L.Ed.2d 504 (1986). Here, we must first identify the nature of the remedy the plaintiff seeks under the WPCL. In *Ambrose, supra,* and *McMahon, supra,* the plaintiffs sought to utilize the WPCL so as to impose personal liability upon certain corporate officers where there were insufficient corporate assets to satisfy the corporation's debts to the funds. The plaintiff in this case does not seek to gain such an advantage through the WPCL; rather, the only additional remedy the plaintiff seeks is the more favorable liquidated damages provision contained in the WPCL when com-

---

4. The Third Circuit's decision in *McMahon* had not been announced when the parties submitted

their memoranda in support of their motions.

pared to ERISA. *Compare* 43 P.S. § 260.-10 with 29 U.S.C. § 1132(g)(2)(C)(ii). The narrow question we must, therefore, decide is whether Congress intended that the LMRA and/or ERISA, specifically, 29 U.S.C. § 1132(g)(2)(C)(ii), preempt 43 P.S. § 260.10.

Section 1132(g)(2) provides that:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under *Federal* or *State* law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). (Emphasis added). The WPCL provides that:

Where wages remain unpaid ... and no good faith contest or dispute of any wage claim ... exists ..., the employee shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.[5]

■ The WPCL, as can be seen, establishes a higher "cap" on liquidated dam-ages than does ERISA, 20% v. 25%. We believe the explicit language of ERISA, however, makes it clear that Congress intended that the individual states would be allowed to fix such higher caps and that where they chose to do so their action would not be preempted by ERISA. While we believe the explicit language of § 1132(g)(2) makes it unnecessary for us to examine ERISA's legislative history, more particularly the MPPAA's legislative history, we proceed to do so since we find even further support for our conclusion that ERISA does not preempt the WPCL insofar as it establishes a higher cap on allowable liquidated damages. In the House Ways and Means Committee report on the 1980 amendments to ERISA, *i.e.*, the MPPAA, the Committee clearly stated that " ... the bill does not preclude the award of liquidated damages in excess of the 20% level where an award of such a higher level of liquidated damages is permitted under applicable State or other law". H.R.Rep. No. 869, Pt. II, 96th Cong., 2d Sess., 48–49, *reprinted in* 1980 U.S.Code Cong. & Ad. News 2918, 2993, 3037–3038; *see also, I.A.M. National Pension Fund v. Monal Manufacturing, supra.* Based on the Act's explicit language and its legislative history, we believe it is clear that ERISA does not preempt the WPCL to the extent it establishes a higher cap on allowable liquidated damages.

■ As stated earlier, the defendant does not argue that ERISA preempts the WPCL. It argues that the LMRA preempts the state law. As we stated earlier, we do not believe the defendant's argument can be addressed without consideration of ERISA. The LMRA was enacted in 1947. ERISA was enacted by Congress in 1974 and amended by the MPPAA in

---

**5.** The WPCL defines "wages" as used in § 260.10 as including "fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employes' pay by the employer", 43 P.S. § 260.3.

The WPCL also provides that, "Any employe or group of employes, labor organization or party to whom any type of wages is payable may institute actions provided under this act". 43 P.S. § 260.9a. Thus, the plaintiff Fund comes within the definition of "employee" contained in 43 P.S. § 260.10.

1980. Congress was certainly cognizant of the provisions of LMRA when it enacted ERISA and the MPPAA and, thus, it is clear that Congress did not interpret LMRA as preempting this aspect of state wage payment and collection laws. Further, if we accepted the defendant's argument that LMRA preempts Pennsylvania's WPCL, we would at the same time be declaring the provisions of 29 U.S.C. § 1132(g)(2)(C)(ii) regarding state law to be nullities. It is a well-established rule of legislative construction that no law, or any particular provision thereof, should be interpreted in a manner which renders it meaningless, and that all laws should be construed in harmony with one another wherever possible. We find that when we interpret LMRA and ERISA in conjunction with one another, it is clear that Congress did not intend LMRA to preempt state wage payment and collection laws so as to preclude the states from establishing higher caps on allowable liquidated damages where a pension fund such as the plaintiff seeks to recoup allegedly unpaid contributions. We thus find and conclude that the LMRA does not preempt Pennsylvania's WPCL, specifically, 43 P.S. § 260.10, to the extent the WPCL establishes such a higher cap.

Our analysis and conclusion with regard to this issue creates another issue which we feel we must address, *viz.*, may an award of liquidated damages equalling 25% of the unpaid contributions be made under Pennsylvania's WPCL where the collective bargaining agreement contains no liquidated damages clause whatsoever?

Section 1132(g)(2)(C) directs a court, where judgment is rendered in favor of the plan, to award the plan the greater of the interest on the unpaid contributions or liquidated damages *provided for under the plan* not in excess of 20% or such higher percentage as may be permitted under Federal or State law. A court must, therefore, in the first instance look to the provisions of the plan itself to determine the percentage, if any, to which the parties to the contract have agreed to "peg" an award of liquidated damages. This percentage, of course, may not exceed 20% of the unpaid contributions or such a higher percentage as established by State or Federal law; it is also completely permissible for the parties to establish a lower percentage or make no provision for liquidated damages whatsoever.

Under Pennsylvania's WPCL, however, a court need only determine whether there was a lack of a good faith dispute or contest in order to award the plan 25% of the unpaid contributions as liquidated damages. The court need not even examine the terms of the collective bargaining and, thus, even where the contract is silent as to liquidated damages, a court may still make such an award. The conflict between ERISA and the WPCL is apparent.

■ ■ ERISA, as interpreted by the Third Circuit, generally preempts the WPCL. Section 1132(g)(2)(C)(ii) provides a *narrow* exception to this general rule of preemption. We believe that to allow a plan to recover liquidated damages under the WPCL where the collective bargaining agreement is silent as to such damages, as is the case here, would allow the WPCL to fall beyond the walls of this narrow exception. Congress through § 1132 provided the plaintiff with a set of specific, explicit and limited damages which may be recovered from the employer. One component of these damages is "liquidated damages *provided for under the plan* ..." 29 U.S.C. § 1132(g)(2)(C)(ii) (emphasis added). To allow a plan to recover liquidated damages pursuant to the WPCL where such damages are in no way provided for under the plan would bestow upon the fund a remedy greater in scope than that provided by ERISA.[6] We do not believe Congress intended such a result, and for this reason,

6. Under ERISA, where the collective bargaining agreement contains no liquidated damages clause, the plan would be limited to collecting in lieu of liquidated damages interest on the unpaid contributions and would, in essence, collect such interest twice. *See* 29 U.S.C. § 1132(g)(2)(B) and (C)(i).

we hold that ERISA preempts the WPCL to the extent it would allow a plan to recover liquidated damages under § 260.10 even where the parties to the agreement made no provision for recovery of such damages. Applying this conclusion to the facts of the case before us, we find the Fund possesses no claim, should it prevail on the contract issue, to liquidated damages equalling 25% of any unpaid contributions since the 1982–85 contract is devoid of any mention of liquidated damages. Therefore, the Fund is limited to recovering interest on the unpaid contributions as provided by 29 U.S.C. § 1132(g)(2)(C)(i).[7]

## THE CONTRACT

Finally, we reach the merits of the parties' contentions that the defendant was or was not contractually obligated to contribute to the Fund for January, 1985.

The plaintiff alleges in its complaint that the defendant is required to contribute to the Fund for January, 1985, according to the terms of the 1982–85 contract. (Plaintiff's Complaint, ¶ 3.) Exhibit A attached to the plaintiff's complaint is a copy of the 1985–87 contract. The Fund in its memoranda, in addition, argues that the 1985–87 contract as well as the 1982–85 contract requires such a contribution. Normally, we would not consider the plaintiff's claims regarding the 1985–87 contract since it stated no claim pursuant to said agreement in its complaint nor has it requested an opportunity to amend its complaint so as to allege such a claim. We will, however, in the interest of judicial economy and efficiency and since the defendant in its memoranda has addressed the merits of the plaintiff's claims regarding the 1985–87 contract, consider the plaintiff's complaint as if it had been so amended to state alternative actions under both the 1982–85 and 1985–87 collective bargaining agreements. We find, based on our analysis of the contracts, that the defendant possessed no obligation under either the 1982–85 or the 1985–87 contract to contribute to the Fund for the month of January, 1985.

The defendant, in fact, made no contribution to the Fund for the months of January and February, 1985. It is undisputed that the defendant was not required to make such a contribution for the month of February, 1985, since no employee, because of the strike, had worked more than sixty hours during January, 1985. As for January, 1985, and . the defendant's obligations under the 1982–85 contract, the essence of the plaintiff's argument is that a contractual right to such contributions "vested" in those employees eligible for participation in the Fund as of or prior to December 31, 1984, *i.e.*, the employee's right to the contribution and the defendant's accompanying obligation to contribute "accrued" prior to the expiration of the contract. In response, the defendant argues that no such right accrued prior to the agreement's December 31, 1984, expiration date and, therefore, it possesses no obligation to make the contribution the Fund seeks.

Our starting point is, of course, the terms of the collective bargaining agreement itself. The 1982–85 contract clearly provides that the contract was to expire on December 31, 1984. The relevant provisions of the agreement regarding contributions to the Fund, *i.e.*, Article XVI, are set out above and need not be repeated. There is no indication in Article XVI that because the defendant did not become obligated to the Fund until February 1, 1982, there would be an obligation to contribute for January, 1985. Article XVI does not state, for example, that the defendant would be required to make thirty-six monthly install-

---

7. A court in order to award liquidated damages pursuant to 43 P.S. § 260.10 must find that there was no good faith dispute or contest between the parties as to the employer's obligation. ERISA simply mandates that a court award such damages where so provided if the plan prevails on the merits. *See* 29 U.S.C. § 1132(g)(2). Thus, it would appear that a plan's ability to recover the additional 5% in liquidated damages under the WPCL is contingent upon the court's finding of a lack of a good faith dispute, and absent such a finding, the claimant may only recover up to the 20% of unpaid contributions as provided for under ERISA.

ments, *i.e.*, the time span of the contract. Under the plain language of the contract, the defendant was only required to make thirty-five monthly contributions to the Fund pursuant to the 1982–85 contract. It is true as plaintiff argues that the fact that the contract expired on December 31, 1984, does not prevent the defendant from being obligated to make a payment to the Fund after that date. The parties must still have contemplated that the right to such a payment would have vested prior to the agreement's expiration, *i.e.*, the right must have accrued prior to December 31, 1984. *See International Union, United Automobile Aerospace, and Agricultural Implement Workers of America (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir.1983) (parties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship). We find nothing in Article XVI or anywhere else in the 1982–85 contract to indicate that the defendant and the collective bargaining unit, *i.e.*, the Union, intended that the mere fact that certain employees worked sixty or more hours in December, 1984, would vest in them a right to contribution to the Fund during January, 1985. We reject the plaintiff's argument that because certain employees were "eligible" for such a contribution because they had worked more than sixty hours in December, 1984, there was a concomitant "obligation" on the defendant's part to make a contribution to the Fund for January, 1985. The literal terms of the contract clearly show that the parties did not contemplate that the fulfillment of Article XVI's "eligibility" requirement was to be equated with the accrual or vestiture of a right to such contributions.

We also reject the plaintiff's arguments that the defendant was obligated to contribute to the Fund for January, 1985, based on the 1985–87 agreement. Here, the Fund argues that the 1985–87 contract commenced on January 1, 1985, and that under the terms of Article XVI of this contract, those employees who worked more than sixty hours in December, 1984, were entitled to contributions for January,

1985. The Plaintiff completely ignores, however, Article XVI's language that the defendant's obligation to the Fund under the 1985–87 contract would not commence until February 1, 1985. The plaintiff further betrays the weakness in its argument by admitting that the defendant's obligation to the Fund is at the rate of $105.00 per month per eligible employee. The 1985–87 contract set the defendant's monthly obligation, effective February 1, 1985, at $115.00 per month per eligible employee. Thus, the plaintiff seeks to intertwine the provisions of the 1982–85 and 1985–87 contracts to reach a desired result. We believe this inconsistency further demonstrates the lack of merit in the plaintiff's claim.

In summary, we find the terms of the 1982–85 and the 1985–87 contracts to be clear and unambiguous, and under the terms of these agreements, we find and conclude that the defendant possessed no obligation to contribute to the Fund for the month of January, 1985. For these reasons, the defendant's motion for summary judgment will be granted, while that of the plaintiff will be denied.